1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  DANIEL N. KASSABIAN (CABN 215219)
   Assistant United States Attorney
5
   CHRISTOPHER J. CARLBERG (CABN 269242)
6  Special Assistant United States Attorney

7       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
8       Tel:    (415) 436-7200
        Fax:    (415) 436-7234
9       daniel.kassabian@usdoj.gov
        christopher.carlberg2@usdoj.gov
10
   Attorneys for United States of America
11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15  UNITED STATES OF AMERICA,            )   NO. CR 21-00139-RS
                                         )
16         Plaintiff,                    )   **UNITED STATES' OPPOSITION TO**
                                         )   **DEFENDANT NUBLA'S MOTION TO**
17     v.                                )   **EXCLUDE EXPERT WITNESS TESTIMONY**
                                         )
18  JOSEPH NUBLA and HENRY KU,           )
                                         )   Trial Date:  March 27, 2023 (8:30 a.m.)
19         Defendants.                   )   Judge:       Hon. Richard Seeborg
                                         )   Courtroom:   Courtroom 3, 17th Floor
20  ─────────────────────────────────────

21  I.     **INTRODUCTION**

22         The United States intends to call Revenue Agent Ryan Weitzel to provide expert testimony at

23  trial.  *See* Exhibit A (*attached hereto*).  That expert disclosure (which was not attached to Defendant

24  Nubla's motion despite referencing the disclosure as "Exhibit A") and opinions therein must be

25  evaluated in the context of the superseding indictment's allegations and other discovery provided.

26  When the expert's opinions are evaluated in that framework, Defendant Nubla's motion is an

27  ill-conceived and a transparent effort to silence this expert and prevent RA Weitzel from testifying about

28  pertinent facts that are devastating to the defense—facts of which the defense has known for some time,

but were finally spelled out in a well-reasoned expert opinion that relies on them.  Defendant Nubla does not contest RA Weitzel's methodology or expertise, but the conclusions RA Weitzel draws because those conclusions are fact-based evidence of Defendants Nubla's and Ku's guilt.  That is not a basis to exclude expert testimony.  Defendant Nubla's motion should be denied.

## II.   ARGUMENT

### A.   The Defense Mischaracterizes RA Weitzel's Opinions Regarding GAAP

The government's expert disclosure, as it pertains to GAAP and how it is used by the company controlled by Defendant Nubla, Brisbane Recycling Company, Inc. ("Brisbane"), is as follows:

> Revenue Agent Weitzel will testify as to the accrual accounting and bookkeeping practices that are employed by corporations in the United States using Generally Accepted Accounting Principles (GAAP), including the 10 foundational GAAPs (regularity, consistency, sincerity, permanence of methods, non-compensation, prudence, periodicity, materiality, utmost good faith), and methods used by businesses, including small or privately-owned businesses, to achieve those GAAP.  This testimony will include the reasons for GAAP, including the proper reporting of a company's financial condition to interested parties, which may include shareholders, vendors giving credit, lending financial institutions, and tax authorities including the IRS.

> *   *   *

> Revenue Agent Weitzel will testify as to his review of the QuickBooks printouts of Brisbane, bank records of Brisbane, tax preparation files of Brisbane's tax preparer (Calvin Louie, CPA), Revenue Agent Weitzel's observations from his review for this case, and that what he observed reflects accrual accounting that follows GAAP, with the exception of a series of transactions connected to transfers of funds from Brisbane to Mr. Ku and Mr. Ku's entities.  Revenue Agent Weitzel will testify as to examples of expenses and specific expense transactions that reflect GAAP and proper and complete recordation of journal entries.

Exh. A, at 4:6-13 & 4:27-5:5.  Defendant Nubla's motion conflates the requirement that public companies must file financial statements that comply with all GAAP with the more general concept that GAAP is a set of accounting and financial reporting standards set by the Financial Accounting Standards Board (FASB) and used by entities, large and small, throughout the United States, including Brisbane. By way of comparison, the International Financial Reporting Standards (IFRS) set by the International Accounting Standards Board (IASB) are used elsewhere, like Europe.  As noted above, RA Weitzel's testimony is not going to be a critique of the extent to which Brisbane employs or fails to employ GAAP.  Instead, his testimony will focus on the variance in Brisbane's practices and use of GAAP when

1  it came to recording the transactions at issue versus Brisbane's legitimate business affairs.  Accordingly,

2  RA Weitzel's testimony about the difference in how Brisbane treated these transactions, using GAAP as

3  the framework with which United States accounting is performed, is proper.

**B.    Expert Testimony Concerning Henry Ku's Expense Recordation and Tax Returns And Facts That Tend To Show Concealment In General Are A Core To The Government's Case Per The Superseding Indictment's Allegations**

6       Defendant Nubla's motion makes what is, in essence, a relevance objection to testimony about

7  Defendant Ku's expense recordation and tax returns.  This case has always been about a conspiracy

8  between at least two people—Defendants Nubla and Mr. Ku—using the business entities they control

9  for their personal benefit.  They conspired to direct money from Defendant Nubla's company (Brisbane)

10 to Defendant Ku and his companies (Pegasus Aggregate and Jupiter Prime Monarch ("JPM")) to conceal

11 income from the IRS, creditors, and other parties.  Then, at Defendant Nubla's request, Defendant Ku

12 returned the funds back to Defendant Nubla.  Mr. Nubla's motion essentially argues that Defendant Ku's

13 half of this partnership in crime is irrelevant to this case against both defendants.  That argument fails.

14      The superseding indictment is replete with allegations that place Defendant Ku's financials,

15 entities, and their respective tax returns at the core of the charged indictment.  It alleges: "Between

16 March 3, 2009, and March 30, 2015, NUBLA directed that checks from Brisbane, totaling

17 approximately $18,387,343, be paid to Pegasus and JPM.  NUBLA retained control of these funds even

18 after the transfers into KU's bank accounts."  ECF 14 at 2 ¶ 6.  Defendant Ku then returned these funds

19 to Defendant Nubla through the alleged forms (e.g., fake loan, money transfers, and residence

20 purchases) from both his companies' and personal accounts.  How Defendant Ku personally and through

21 his companies recorded these financial transactions and transferred his funds, and thereby avoided

22 paying taxes on them, was always a core part of this case about evading taxes.  Defendant Nubla's

23 attempt to describe the evidence of Defendant Ku's financials and account as "other act" character

24 evidence under Federal Rule of Evidence 404(b) is without merit.  The evidence of Defendant Ku's

25 financial dealings and tax reporting is "direct evidence of the ongoing conspiracy charged in the

26 indictment."  *United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016) ("In cases where the incident

27 offered is part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b)

28 because it is not an 'other' crime.") (quotation omitted).  At the very least, the evidence of Defendant

Ku's financials and tax returns is evidence that is "inextricably intertwined with the crime with which the [defendants are] charged and therefore not meet the requirements of Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995).

Separately, Defendant Nubla's motion seeks to exclude testimony about the defendants' attempt to conceal Brisbane's and Mr. Nubla's income from "creditors and other parties." Def. Mot. at 8:5-18 (citing the expert disclosure attached hereto as Exhibit A). First, Mr. Nubla's notice argument under Rule 404(b) makes no sense because superseding indictment itself alleges that "NUBLA placed the funds into KU's entities to conceal his income from the Internal Revenue Service, creditors, and other parties." ECF 14 ¶6 (emphasis added). Mr. Nubla states that he is unaware of any evidence that he sought to evade creditors. *See* Def. Mot. at 8:15. To the extent there is no evidence of such introduced at trial, the expert will have no need to testify as to that method of concealment.

### C. Expert Testimony About The Defendants' Conduct From Which Their Intent Can Be Inferred Is Appropriate.

RA Weitzel's anticipated testimony sets forth the details of the defendants' scheme described above, including the payments from Brisbane to Defendant Ku and his entities—all in ways that appear to be tax deductible business expenses—and then how Defendant Ku and his entities give those funds back to Defendant Nubla—as purported gifts and a $7 million loan. *See* Ex. A, at 6:13-8:25 & Attach B. RA Weitzel's anticipated testimony also sets forth calculations of how much federal income tax would be owed on these transactions to the extent they are part of the scheme set forth in the superseding indictment. *Id*. Attach B. RA Weitzel's anticipated testimony also might include how, after June 2015 (when IRS agents first visited Defendant Nubla at Brisbane), the above-noted conduct stopped and Defendant Nubla and his family started receiving significant increases in compensation instead— primarily in the form of fiscal year-end bonuses. The result throughout was that Brisbane continued to make little taxable income or otherwise have losses. *Id*. at 8:26-10-9. This is wholly proper expert testimony in a tax case. *See, e.g., United States v. Marchini*, 797 F.2d 759, 765-66 (9th Cir. 1986). In *Marchini*, the Ninth Circuit affirmed the trial court allowing a summary expert witness to testify to his "conclusion that Marchini had omitted wages from Forms 941 and 940 during the time periods involved in the case." *Id*. at 765. This followed the summary expert witness "having heard the testimony of

1   previous witnesses and having reviewed the government's exhibits" and after admitting the

2   government's summary exhibit prepared by the summary expert witness and used during his testimony.

3   *Id*. The Ninth Circuit also noted that the summary expert witness's "calculations were based upon the

4   evidence adduced at trial [and that he] was cross-examined by the defendant as to the basis of his

5   testimony." *Id*. at 766.  That is exactly what the government anticipates will happen here.  So, the real

6   nub of Defendant Nubla's motion in this regard is word choice.

7           For one, the motion calls out RA Weitzel's opinion that Brisbane's compensation to Defendant

8   Nubla and his relatives after 2015 "was nonetheless deducted to reduce Brisbane's reported taxable

9   income and resulted in a continuation of little to no corporate taxes paid by Brisbane that has persisted

10  from tax years 2009 through 2021."  Def. Mot. at 6.  But these are the simple facts.  That is, Brisbane

11  deducted the compensation of Mr. Nubla and his relatives on Brisbane's tax returns.  By doing so, it

12  reduced Brisbane's reported taxable income.  That, in turn, resulted in little to no corporate taxes paid by

13  Brisbane that has persisted from tax years 2009 through 2021.  Indeed, Defendant Nubla's motion belies

14  that these facts, on their face, result in a compelling inference that the compensation and resulting

15  deductions were done with an intent to evade taxes—but that is for the jury to decide, and not something

16  RA Weitzel will explicitly opine.

17          As another example, Defendant Nubla criticizes the term "constructive dividend," *see* Def.'s

18  Mot. At 7:23-8:4, seeking to parlay the Court's Order excluding the use of the term "disguised dividend"

19  at trial, *see* Order on Government's Motions in Limine [ECF 134] at 7.   But the two terms are

20  inherently different in their potential for prejudicial impact.  The term "constructive dividend" has been

21  defined for over 30 years as:

> A taxable benefit derived by a shareholder from his or her corporation although such
> benefit was not designated as a dividend.  Examples include unreasonable compensation,
> excessive rent payment, bargain purchases of corporate property.  The passthrough of
> undistributed taxable income (i.e., UTI) to the shareholders of a Subchapter S corporation
> sometimes is referred to as a constructive dividend.  Constructive dividends generally are
> a problem limited to closely-held corporations.

> If a stockholder has an unqualified right to a dividend, such a dividend is called
> constructive for tax purposes though he does not actually receive it because it is subject
> to his demand and the corporation has set it aside for this purpose.  Clark v. CIR.,
> C.A.Fed., 26 F.2d 698

1    BLACK'S LAW DICTIONARY at 478 (6th ed. 1990).  And unlike "disguised," the adjective "constructive"

2    is as benign as they come.  Its root work is "construct," and the adjective is used routinely to neutrally

3    describe the concept of an effective state without being in that actual state.  Common examples in the

4    law are "constructive possession," "constructive authority," "constructive notice, and "constructive

5    trust."  *See id*. at 313-14.  The argument that "constructive" infects Mr. Weitzel's opinion with undue

6    prejudice phrase lacks credulity—no emotional response will be evoked, no confusion will occur, no

7    time will be wasted.  *See* Fed. R. Evid. 403.

8       Finally, Defendant Nubla points to an instance where the government's expert disclosure states

9    the word "conceal" and another where it uses the phrase "provided false information."  Def. Mot. at

10    7:15-21.  These come from the disclosure's prefatory section that largely mirrors the superseding

11    indictment's allegations.  *See* Ex. A, at 2:18-4:4.  As previously noted to defense counsel, during the

12    evidentiary portion of the trial, rather than invoking testimony of concealment and falsity that might

13    ascribe the conduct as nefarious, the government will use more neutral wording, such as "having no

14    economic substance, and solely designed to eliminate or reduce their income tax liability."  *United*

15    *States v. Anderson*, 778 F.2d 602, 603 (10th Cir. 1985).  Defendant Nubla is well aware of this, but

16    nonetheless has wasted the Court's time in raising an issue where none exists.

17    **III.    CONCLUSION**

18       The Court should deny Defendant Nubla's motion.

19                               Respectfully submitted

20    Dated:  March 10, 2023                ISMAIL J. RAMSEY
                                           United States Attorney

21

22                                  By:____/s/_____
                                   DANIEL N. KASSABIAN

23                                    Assistant United States Attorney
                                   CHRISTOPHER J. CARLBERG

24                                    Special Assistant United States Attorney

25

26

27

28

# EXHIBIT A

1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  DANIEL N. KASSABIAN (CABN 215219)
   Assistant United States Attorney
5
   CHRISTOPHER J. CARLBERG (CABN 269242)
6  Special Assistant United States Attorney

7      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
8      Tel:    (415) 436-7200
       Fax:    (415) 436-7234
9      daniel.kassabian@usdoj.gov
       christopher.carlberg2@usdoj.gov
10
   Attorneys for United States of America
11

12                  UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15  UNITED STATES OF AMERICA,          )  NO. CR 21-00139-RS
                                       )
16          Plaintiff,                 )  **UNITED STATES' DISCLOSURE OF EXPERT**
                                       )  **WITNESS TESTIMONY AND SUMMARIES OF**
17      v.                             )  **VOLUMINOUS EVIDENCE**
                                       )
18  JOSEPH NUBLA and HENRY KU,         )  Trial Date:  March 27, 2023 (8:30 a.m.)
                                       )  Judge:       Hon. Richard Seeborg
19          Defendants.                )  Courtroom:   Courtroom 3, 17th Floor
                                       )
20  _____

21  **I.    INTRODUCTION**

22          The United States intends to call Revenue Agent Ryan Weitzel, during its case-in-chief, to

23  provide expert testimony at trial.  The United States also intends to introduce in evidence summaries,

24  through Revenue Agent Weitzel during its case-in-chief, of voluminous evidence pursuant to Federal

25  Rule of Evidence 1006.  The government has charged both defendants Joseph Nubla and Henry Ku with

26  one count of conspiracy to defraud the United States by obstructing the lawful functions of the Internal

27  Revenue Service (IRS) in violation of 18 U.S.C. § 371, and has also charged defendant Joseph Nubla

28  with tax evasion in violation of 26 U.S.C. § 7201.  The use of expert witness testimony and summaries

1   of voluminous evidence as set forth below will assist the jury in understanding the evidence presented at

2   trial.

3   **II.**   **WITNESS'S QUALIFICATIONS AND PRIOR TESTIMONY**

4        Revenue Agent Weitzel is trained in taxation and accounting; his education, training, experience,

5   certifications, and prior expert testimony during the last four years is set forth in Attachment A.

6   Revenue Agent Weitzel has not authored any publications in the previous 10 years.

7   **III.**   **EXPERT TESTIMONY**

8        The use of expert witness testimony is permitted if it "will assist the trier of fact to understand

9   the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. The use of expert witnesses in

10   fraud prosecutions is an accepted practice. *See, e.g.*, *United States v. Winkle*, 477 F.3d 407, 415-17 (6th

11   Cir. 2007) (district court did not err in admitting former bank examiner's testimony that the transactions

12   constituted check kiting under Fed. R. Evid. 702); *United States v. Majors*, 196 F.3d 1206, 1215-16

13   (11th Cir. 1999) (district court's did not err in admitting FBI financial analyst's testimony under Fed. R.

14   Evid. 702); *United States v. Chappell*, 6 F.3d 1095, 1100 (5th Cir. 1993) (district court did not err in

15   admitting bank security officer's testimony regarding detecting counterfeit checks under Fed. R. Evid.

16   702). Expert testimony by an IRS agent that expresses an opinion as to the proper tax consequence of a

17   transaction is also admissible. *See United States v. Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980).

18       **A.**   **Overview of Facts That Are the Subject of Expert Testimony and Their Bases**

19        The United States anticipates that the evidence in this case will establish that, at all relevant

20   times, (1) Brisbane Recycling Company, Inc. (hereinafter, "Brisbane") was a rock crushing business,

21   (2) Mr. Nubla was the President and ran daily operations at Brisbane, (3) Mr. Ku was corporate counsel

22   for Brisbane, and (4) Mr. Ku owned and controlled Pegasus Aggregate, Inc. ("Pegasus"), Jupiter Prime

23   Monarch ("JP Monarch"), and JPM Energy, Inc. ("JPM Energy") (collectively, "Mr. Ku's entities").

24   Between March 3, 2009 and March 30, 2015, Mr. Nubla directed that checks from Brisbane, totaling

25   $18,378,343, be paid to Mr. Ku and Mr. Ku's entities. Mr. Nubla moved funds into Mr. Ku's entities

26   to conceal Brisbane's and Mr. Nubla's income from the IRS, creditors, and other parties.

27        Mr. Ku then returned $11,871,817 of Brisbane's funds to Mr. Nubla by way of cashier's checks

28   to purchase real properties for Mr. Nubla, funding a loan to Mr. Nubla that had no discernable economic

purpose, and funds deposited into Mr. Nubla's personal bank account.  More specifically, on or about August 26, 2009, Mr. Ku used $967,948 of the Brisbane funds to purchase 710 Tender Lane, Foster City, California, for Mr. Nubla.  Then, on or about September 7, 2010, Mr. Ku used $926,548 of the Brisbane funds to purchase 60 Loma Vista Drive, Burlingame, California, for Mr. Nubla.  And then, on or about September 12, 2014, Mr. Ku used $1,587,320 of the Brisbane funds to purchase 7211 Rosecliff Court, Pleasanton, California, for Mr. Nubla.  Also, on or about June 24, 2014, Mr. Ku drafted a loan agreement to return $7,000,000 in Brisbane funds to Mr. Nubla, and then pursuant to that loan, on or about June 24, 2014, Mr. Ku purchased a cashier's check for $4,000,000 payable to Mr. Nubla, which Mr. Nubla deposited into his personal bank account ending x6815 at Bank of America.  Pursuant to the loan, on or about January 20, 2015, Mr. Ku purchased a cashier's check for $3,000,000 payable to Mr. Nubla, which Mr. Nubla then also deposited into his personal bank account ending x6815 at Bank of America.  Finally, between August 14, 2009 and August 15, 2015, Mr. Ku transferred $1,390,000 from his personal account at First Bank to Mr. Nubla's personal account at First Bank.  At the same time, for fiscal years 2009 through 2014, Mr. Nubla provided false information to Brisbane's tax return preparer that monies paid by Brisbane to Pegasus and JPM were for business deductions to be reported on Brisbane's federal corporate income tax returns (Forms 1120) filed with the IRS for these same tax years.  On or about April 15, 2015, Mr. Nubla filed a joint federal income tax return (Form 1040) for tax year 2014 that failed to report income of $5,807,320.  On or about April 15, 2016, Mr. Nubla filed a joint federal income tax return (Form 1040) for tax year 2015 that failed to report income of $3,060,000.

The United States anticipates that the evidence in this case will include financial records covering several years and documenting numerous financial transactions, and the ultimate source and/or disposition of the funds involved in those transactions.  Given the number of transactions at issue, and the number of records involved, it is anticipated that the evidence in this case will be voluminous.  Revenue Agent Weitzel's expert testimony will assist the jury in understanding this voluminous evidence.

Revenue Agent Weitzel's testimony will be based on evidence admitted at trial, including IRS records, financial records, witness testimony, and summaries of voluminous evidence as defined by Federal Rule of Evidence 1006.  Among other things, Revenue Agent Weitzel will summarize financial

1  documents, including bank records, witness testimony, and other documents, including tax returns and

2  other documents filed with the IRS (such as Forms 1040), will provide an analysis of admitted evidence,

3  and explain the resulting tax consequences.

### B.  Testimony Regarding Accounting, Bookkeeping Practices, and Corporate and Tax Preparation Practices

6  Revenue Agent Weitzel will testify as to the accrual accounting and bookkeeping practices that

7  are employed by corporations in the United States using Generally Accepted Accounting Principles

8  (GAAP), including the 10 foundational GAAPs (regularity, consistency, sincerity, permanence of

9  methods, non-compensation, prudence, periodicity, materiality, utmost good faith), and methods used by

10  businesses, including small or privately-owned businesses, to achieve those GAAP.  This testimony will

11  include the reasons for GAAP, including the proper reporting of a company's financial condition to

12  interested parties, which may include shareholders, vendors giving credit, lending financial institutions,

13  and tax authorities including the IRS.  Revenue Agent Weitzel will testify as to the proper and complete

14  recordation entries of revenue and expense transactions in an accrual accounting system, including for

15  cash and credit transactions.  His testimony will also comprise well-known transaction recording best

16  practices, including journal entries with the dual entry accounting method using accounting software,

17  such as QuickBooks.  Revenue Agent Weitzel will testify as to the role of proper and complete

18  recordation of transactions affecting revenues, expenses, assets, liabilities, and equity, to prepare and file

19  federal tax returns that report information to the IRS, and to determine the accuracy of those filed returns

20  by the IRS.

21  Revenue Agent Weitzel will testify as to federal personal income tax reporting and the types of

22  asset acquisitions and economic transactions that are reportable events on federal personal income taxes.

23  This includes constructively-received income that is available to the taxpayer, regardless of whether it is

24  actually in the taxpayer's possession, such as income received and held for the taxpayer by his agent.

25  Tres. Reg. (26 C.R.F.) § 1.451-2.

### C.  Brisbane's Bookkeeping, Accounting, and Tax Reporting Practices

27  Revenue Agent Weitzel will testify as to his review of the QuickBooks printouts of Brisbane,

28  bank records of Brisbane, tax preparation files of Brisbane's tax preparer (Calvin Louie, CPA), Revenue

1    Agent Weitzel's observations from his review for this case, and that what he observed reflects accrual

2    accounting that follows GAAP, with the exception of a series of transactions connected to transfers of

3    funds from Brisbane to Mr. Ku and Mr. Ku's entities.  Revenue Agent Weitzel will testify as to

4    examples of expenses and specific expense transactions that reflect GAAP and proper and complete

5    recordation of journal entries.

6

7    **D.    Testimony Regarding Fund Transfers From Brisbane to Mr. Ku's Entities and Brisbane's Accounting and Tax Reporting for Them**

8    Revenue Agent Weitzel will testify that, from 2009 through 2014, 30 checks totaling

9    $18,378,343 were signed by Mr. Nubla and were drawn on the accounts of Brisbane at Bank of

10   America, First Bank, and Union Bank; those 30 checks were deposited into accounts of Mr. Ku,

11   Pegasus, JP Monarch, and JPM Energy at First Bank.  Revenue Agent Weitzel will testify that 19 of

12   those checks totaling $14,881,981 are associated with QuickBooks accounting entries for Brisbane

13   during its fiscal years ending June 30, 2009 through June 30, 2014 that reflect the same amounts as those

14   checks as being due to JPM, Inc. and Pegasus Aggregate.  Those 19 journal entries debit expenses as

15   "Rent," "Equipment Rental," "Repairs and Maintenance," and "Cost of Sales," all of which were Cost of

16   Goods Sold accounts, coupled with matching credit journal entries to accounts payable.  These

17   bookkeeping expense entries were unlike other bookkeeping entries entered into QuickBooks.  In

18   addition to being of an order of magnitude more than other transactions, these expense entries as to the

19   amount due to JPM, Inc. and Pegasus did not reference any invoice, purchase order, or other

20   documentation of the transaction.  In addition, the majority of entries were made in the last quarter of the

21   fiscal year, at a time at which the total revenues for a year were more certain and could be offset by way

22   of expenses to reduce what otherwise would be taxable income.  The entries for the payments actually

23   made would be made in the following fiscal year or later, making it more difficult to associate the actual

24   cash outflow with the expense; the timing of the payments were much later than the typical aging of

25   accounts payable to arms-length vendors, which normally would have late payment terms, by a company

26   without liquidity constraints.  Finally, the checks were dated even later, and deposited resulting in actual

27   fund transfers later still, which is highly unusual because it is typical business practice to deposit checks

28   regularly, soon after receipt, or immediately when a significant sum is involved, to avoid non-payment.

### E.    Purchases of Construction Equipment by Mr. Ku's Entities

Revenue Agent Weitzel will testify about equipment purchased by Mr. Ku, JP Monarch, JPM

Energy, and Pegasus of equipment from vendors, specifically Mecom Equipment, Powerscreen, Volvo

Construction, Cementech, and McNeilus, where the invoicing or other source documents from the

vendor tends to show that the equipment was used by Brisbane.  Revenue Agent Weitzel will testify

about the tax consequences, if any, of these purchases that follow Brisbane's transfer of funds to Mr. Ku

and Mr. Ku's entities where those funds were then used to make these purchases.  Revenue Agent

Weitzel will testify about whether the payments from Brisbane to Mr. Ku's entities are consistent with

the typical characteristics of lease or royalty payments on equipment purchases, the treatment of those

payments for tax reporting purposes by Mr. Ku's entities, and a comparison of the timing of the

equipment purchases by Mr. Ku and Mr. Ku's entities with the payments from Brisbane to Mr. Ku's

entities.

### F.    Treatment of Brisbane's Payments to Mr. Ku's Entities in Corporate Tax Returns

Revenue Agent Weitzel will testify about how Internal Revenue Code (26 U.S.C.) § 162(a)

allows a company to deduct "ordinary and necessary expenses paid or incurred during the taxable year

in carrying on any trade or business and regulation," and how Treasury Regulation (26 C.F.R.) § 1.162-

1(a) specified further and in relevant part that (emphasis added):

> Business expenses deductible from gross income include the ordinary and necessary
> expenditures directly connected with or pertaining to the taxpayer's trade or business,
> except items which are used as the basis for a deduction or a credit under provisions of
> law other than section 162. *The cost of goods purchased for resale, with proper
> adjustment for opening and closing inventories, is deducted from gross sales in
> computing gross income*. See paragraph (a) of § 1.161-3. Among the items included in
> business expenses are management expenses, commissions (but see section 263 and the
> regulations thereunder), labor, supplies, incidental repairs, operating expenses of
> automobiles used in the trade or business, traveling expenses while away from home
> solely in the pursuit of a trade or business (see § 1.162-2), advertising and other selling
> expenses, together with insurance premiums against fire, storm, theft, accident, or other
> similar losses in the case of a business, and rental for the use of business property. No
> such item shall be included in business expenses, however, to the extent that it is used by
> the taxpayer in computing the cost of property included in its inventory or used in
> determining the gain or loss basis of its plant, equipment, or other property. See section
> 1054 and the regulations thereunder. A deduction for an expense paid or incurred after
> December 30, 1969, which would otherwise be allowable under section 162 shall not be
> denied on the grounds that allowance of such deduction would frustrate a sharply defined
> public policy. See section 162(c), (f), and (g) and the regulations thereunder. The full
> amount of the allowable deduction for ordinary and necessary expenses in carrying on a
> business is deductible, even though such expenses exceed the gross income derived
> during the taxable year from such business. In the case of any sports program to which

section 114 (relating to sports programs conducted for the American National Red Cross) applies, expenses described in section 114(a)(2) shall be allowable as deductions under section 162(a) only to the extent that such expenses exceed the amount excluded from gross income under section 114(a).

In relevant part, Treasury Regulation (26 C.F.R.) § 1.163-1 further specifies that:

The cost of goods sold should be determined in accordance with the method of accounting consistently used by the taxpayer.  Thus, for example, an amount cannot be taken into account in the computation of cost of goods sold any earlier than the taxable year in which economic performance occurs with respect to the amount (see § 1.446-1(c)(1)(ii)).

Revenue Agent Weitzel will testify about Brisbane's federal income tax filings (Form 1120) that incorporated the journal entries for amounts due to Mr. Ku's entities as expenses, and will further testify about the government's tax adjustment calculation should those be disallowed, and the additional (difference in) federal tax due for Tax Years 2009 through 2014 of $5,014,990 that would result from those disallowances based on applicable federal corporate tax rates.

Revenue Agent Weitzel will testify about JP Monarch's, JPM Energy's, and Pegasus's federal income tax filings (Form 1120) and the extent to which they included funds received from Brisbane as taxable revenue, and then offset any such reported revenue with undocumented expenses for which there was no readily identifiable corresponding payments from the First Bank accounts of JP Monarch, JPM Energy, and Pegasus.

### G. The Tax Treatment of Transfers of Wealth to Mr. Nubla From Brisbane By Mr. Ku and Mr. Ku's Entities as Mr. Nubla's Agents

Revenue Agent Weitzel will testify about Mr. Nubla's personal tax filings (Form 1040) for tax years 2009 through 2015 and how they did not reflect sources of income in the form of funds and asset transfers from Mr. Ku and Mr. Ku's entities, which may be considered his agents for income recognition purposes.  Specifically, the funds Brisbane paid Mr. Ku and his entities to their accounts at First Bank as described above, were then transferred to Mr. Nubla's personal bank account at First Bank in the amount of $1,390,000 over those tax years.  These transfers were constructive dividends from Brisbane to Mr. Nubla.  *See Estate of Sell*, T.C. Memo. 1992-430 (payment by a corporation of expenses of or benefits to a shareholder without expectation of repayment can result in constructive dividends); *see also 58th Street Plaza Theatre*, 16 T.C. 469 (1951) (amounts paid to a family member that were in excess of

1   the value of services the family member provided constituted a constructive dividend).  Revenue Agent

2   Weitzel will also testify about how Mr. Nubla's personal tax filings (Form 1040) for tax years 2014 and

3   2015, respectively, did not reflect another $4,000,000 payment remitted from the First Bank account of

4   x5037 by a cashier's check on June 24, 2014 and deposited to Mr. Nubla's personal Bank of America

5   account, and another $3,000,000 payment by a cashier's check remitted from the First Bank account of

6   x5037 on January 20, 2015 and also deposited to Mr. Nubla's personal Bank of America account.

7   Revenue Agent Weitzel will testify about how those payments constitute dividend income under the

8   Internal Revenue Code because of the funds' original source.  This is further shown by the irregularities

9   and inconsistences in transactions thereafter ostensibly pursuant to the loan agreement.  Revenue Agent

10  Weitzel will testify how Mr. Nubla's personal tax filings (Form 1040) for tax years 2009, 2010, and

11  2014, respectively, did not report personal income resulting from Brisbane's funds paid to Mr. Ku and

12  his entities that were then used by Mr. Ku to purchase real properties in 2009, 2010, and 2014 that were

13  deeded to Mr. Nubla in those years.  In conclusion, Revenue Agent Weitzel will testify about the total

14  tax paid by Mr. Nubla during tax years 2009 through 2015, the total tax due those years per the

15  government's calculations that include reporting the above-discussed income sources, and the additional

16  (difference in) federal tax due for tax years 2009 through 2015 of $4,546,978 that would result from

17  those disallowances based on applicable federal personal tax rates.

18      Revenue Agent Weitzel will testify about how, as described in Section III.F and this section, the

19  treatment of revenue by Brisbane that was offset as expenses, and the payments to Mr. Ku's entities that

20  were then effectively returned to Mr. Nubla, who is the shareholder and controlling party of Brisbane,

21  resulted in an avoidance of two layers of taxation—i.e., both corporate and personal income tax.

22      Revenue Agent Weitzel will testify that the personal income tax return statutory due date for tax

23  years 2014 and 2015 were on April 15, 2015 and April 15, 2016, respectively.  Further, the IRS

24  considered Mr. Nubla's income tax returns as received on those dates.  (This testimony may also be

25  offered by other non-expert witnesses, but is included here out of an abundance of caution.)

26      **H.    Brisbane's Reporting of Tax Deductible Expenses in Tax Years 2015 Forward**

27      Revenue Agent Weitzel will also testify about a comparison of Brisbane's expense transactions

28  and federal income tax filings after Mr. Nubla was apprised of the IRS inquiring about Brisbane's

operations and transactions with Mr. Ku in June 2015.  Specifically, the expenses associated with Mr. Ku's entities were discontinued thereafter, and Brisbane's reported cost of goods sold decreased significantly.  However, there was a corresponding increase in the wages of Mr. Nubla and his relatives that worked for Brisbane, such that Brisbane had no taxable income, or it was a small fraction of Brisbane's revenues.  Revenue Agent Weitzel will testify that the information provided to Brisbane's tax preparer further demonstrates that, in the three years immediately following the IRS's inquiry, the additional compensation was in the form of bonuses paid during Brisbane's last fiscal quarter, including to certain relatives of Mr. Nubla that had not received any other employment income that same fiscal year.  Also, during the relevant tax years of 2009 through 2018, Brisbane did not pay a corporate dividend to any of its shareholders.  Furthermore, the bonuses paid to persons who were not related to Mr. Nubla were in the range of $5,000-$15,000 (for the few who were paid bonuses), whereas the bonuses paid to Mr. Nubla's family members were in the range of $175,000-$1,600,000.  Revenue Agent Weitzel will testify that the above facts tend to show that, much like the payments to Mr. Ku and his entities, the amount of employee compensation paid to Mr. Nubla and his relatives were non-deductible expenses for corporate income tax purposes.  Internal Revenue Code (26 U.S.C.) § 162(a)(1) permits a corporation to deduct "a reasonable allowance for salaries or other compensation for services personally rendered."  A dividend to shareholders, however, is not deductible by the corporation—it is simply the payment to the shareholder of the remainder of income after taxes.  "Thus, it will normally be in a corporation's interest to characterize such payments as compensation rather than dividends."  *Elliotts, Inc. v. Comm'r*, 716 F.2d 1241, 1243 (9th Cir. 1983).  There is a two-prong test for deductibility under Internal Revenue Code § 162(a)(1): (1) the amount of the compensation must be reasonable and (2) the payments must in fact be purely for services.  *See* Treas. Reg. (26 C.F.R.) § 1.162-7(a) (1960).  "A relevant inquiry is whether an inactive, independent investor would be willing to compensate the employee as he was compensated."  *Elliotts*, 716 F.2d at 1245; *see also LabelGraphics, Inc. v. Comm'r*, 221 F.3d 1091, 1095 (9th Cir. 2000).  Factors to be considered on whether the compensation is deductible are:

1.  The bonuses were in exact proportion to the officers' stockholdings.
2.  Payments were in lump sums rather than as the services were rendered.
3.  There was a complete absence of formal dividend distributions by an expanding corporation.

4.    The system of bonuses was completely unstructured having no relation to services performed.

5.    The company's consistently negligible taxable income was an indication that the bonus system was based on funds available rather than on services rendered.

6.    Bonus payments were made only to the four officer-stockholders, no other employees.

*O.S.C. & Assocs., Inc. v. Comm'r*, 187 F.3d 1116, 1120 (9th Cir. 1999).  Revenue Agent Weitzel will testify about how the application of the above-discussed factors tend to show that Brisbane's expenses were overstated, and in particular the compensation paid to Mr. Nubla and his relatives, tends to show that at least part of that compensation is not deductible for tax purposes, but was nonetheless deducted to reduce Brisbane's reported taxable income and resulted in a continuation of little to no corporate taxes paid by Brisbane that has persisted from tax years 2009 through 2021.

## IV.    SUMMARY TESTIMONY AND RULE 1006 EVIDENCE

The United States intends to introduce summaries of voluminous evidence at trial under Federal Rules of Evidence 611 and 1006 through Revenue Agent Weitzel, including summaries of voluminous (1) QuickBooks entries of Brisbane, (2) financial records of the defendants, Brisbane, Pegasus, and JPM, and (3) IRS records.  Summary testimony is admissible if it will "make the interrogation and presentation effective for the ascertainment of the truth . . . ."  Fed. R. Evid. 611(a); *see also United States v. Olano*, 62 F.3d 1180, 1203-04 (9th Cir. 1995) (permitting the testimony of a summary witness who used "a number of charts . . . [to summarize] the evidence presented by the government's preceding witnesses" in a fraud case).  In addition, evidence may consist of a "summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  Rule 1006 summaries must summarize information which is voluminous, available for inspection, and admissible (although not necessarily admitted), and are admissible themselves.  *United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988); *City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033, 1038 (9th Cir. 1983); *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979).  The proponent of a summary under Rule 1006 must establish the admissibility of the underlying documents as a condition precedent to introduction of the summary.  *Johnson*, 594 F.2d at 1257.  The proponent must also establish that the underlying documents were made available to the opposing party for inspection.  *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984).  The underlying materials need

1    not be admitted in evidence, but in this case the government expects to offer the underlying documents

2    in evidence because they have independent probative value.  The Ninth Circuit has recognized that the

3    district court has discretion to admit both a Rule 1006 summary and the underlying records themselves.

4    *United States v. Anekwu*, 695 F.3d 967, 981-82 (9th Cir. 2012).  Rule 1006 summaries must fairly

5    represent the underlying documents, and their admission into evidence is left to the trial court's

6    discretion. The Ninth Circuit has repeatedly approved the use of Rule 1006 summaries, particularly

7    where, as here, the summaries will aid the jury in organizing information contained in a large number of

8    documents into understandable form.  *See, e.g.*, *Goldberg v. United States*, 789 F.2d 1341, 1343 (9th

9    Cir. 1986) (permitting testimony concerning summaries of voluminous tax records); *United States v.*

10   *Shirley*, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (permitting summary chart of telephone calls to help

11   jury organize and evaluate evidence).

12        Here, the government intends to offer into evidence summaries of financial records from

13   numerous bank accounts, real estate and other financial transactions.  The government intends to offer

14   these summaries into evidence to illuminate numerous financial transactions, and the ultimate source

15   and/or disposition of the funds involved in those transactions.  The government also intends to offer into

16   evidence summaries of tax records, including tax returns that defendants filed or caused to be filed, and

17   other related IRS records.  All of the records upon which the summaries will be based, including the

18   financial records, have already been provided to the defendants.  The Rule 1006 summaries and

19   summary charts are attached hereto as Attachment B.

20   **V.    EXPERT DEMONSTRATIVES**

21        In contrast to Rule 1006 summaries, demonstratives "analyzing testimony or documents already

22   admitted into evidence are merely pedagogical devices, and are not evidence themselves."  *Wood*, 943

23   F.2d at 1053; *see also United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984) (approving the use

24   of summary charts as testimonial aids for government); *United States v. Gardner*, 611 F.2d 770, 776

25   (9th Cir. 1980) (government witness' use of chart summarizing facts and calculations in evidence as a

26   testimonial aid "contributed to the clarity of the presentation to the jury, avoided needless consumption

27   of time and was a reasonable method of presenting the evidence," and admitting the charts into evidence

28   was not reversible error).

1    The demonstratives that the government and Revenue Agent Weitzel might utilize during his

2    expert testimony are attached hereto as Attachment C.

3                                    *        *        *

4    Pursuant to Fed. R. Crim. P. 16(a)(1)(G)(v), I approve this disclosure of my expected testimony.

5

6    _____

7    RYAN WEITZEL
     Revenue Agent, Internal Revenue Service

8

9    Dated:  March 10, 2023                    STEPHANIE M. HINDS
                                               United States Attorney

10                                             By: _____

11                                             DANIEL N. KASSABIAN
                                               Assistant United States Attorney

12                                             CHRISTOPHER J. CARLBERG
                                               Special Assistant United States Attorney

ATTACHMENT A

**Ryan Weitzel, CPA, MPAcc**
450 Golden Gate Ave
MS-6107, EG 1261
San Francisco, CA 94102

*Revenue Agent*

**EDUCATION**

| | |
|---|---|
| 2012 | Training - Summary / Expert Witness |
| 2010 - 2012 | Revenue Agent Income Tax Law Training (Basic – Advanced) |
| 2010 | Certified Public Accountant – State of California |
| 2007 - 2008 | Tax Return Preparer Training (Tax Law for Individuals and  Businesses) |
| 2007 | Masters Degree - Professional Accounting (MPAcc) in Taxation University of Washington, Seattle, Washington |
| 2005 | Concentration in Accounting – University of Washington, Seattle, Washington |
| 1995 | Bachelor of Arts Degree – University of Oregon, Eugene, Oregon |

**EXPERIENCE**

| | |
|---|---|
| 2021 - Present | **Revenue Agent, Special Enforcement Program, San Francisco, California** – Conduct grand jury investigations, complex fraud audits, and complex international audits. Assist the department of Justice attorneys and IRS attorneys with complex tax calculations and serve as tax expert on various criminal tax case projects. Continue to conduct civil tax investigations to determine the correct tax liability of individuals and business organizations |
| 2019 – 2021 | **Revenue Agent, International Individual Compliance, San Francisco, California** – Conducted complex international fraud audits that consisted of complex civil tax investigations conducted to determine the correct tax liability of individuals and business organizations with offshore assets, entities, and financial accounts. |
| 2012 - 2021 | **Revenue Agent, Special Enforcement Program, San Francisco, California** – Conducted grand jury investigations, complex fraud audits, and complex international audits. Assisted the department of Justice attorneys and IRS attorneys with complex tax calculations and served as tax expert on various criminal tax case projects. Conducted civil tax investigations to determine the correct tax liability of individuals and business organizations. |
| 2012 – 2012 | **Revenue Agent, San Francisco, CA** – Conducted detailed examinations of individuals, corporations, s-corporations, and partnerships in order to determine their correct tax liability. |
| 2007 – 2009 | **Employed in the Public Accounting and Tax Preparation Field at various firms** – Prepared tax returns for individuals, their business entities (corporations / partnerships), and their trusts and estates. Was promoted to prepare multi-level partnership tax returns with international operations and learned to prepare the accompanying international tax schedules. |

**SUMMARY, EXPERT WITNESS EXPERIENCE**

2013 - 2018      **Summary, Expert Witness** – Acted as a summary, expert witness on behalf of the Government in three criminal tax trials and two civil U.S. Tax Court cases as follows:

U.S. v. Boitano, CR 11-00585-EJD (N.D. Calif.)

U.S. v. Soderling, CR 11-0530-CRB (N.D. Calif.)

U.S. v. Chang et al., CR 15-00067-WHO (N.D. Calif.)

Mark G. Strom v. Commissioner, U.S. Tax Court, Docket No. 16258-08

Raymond Chico & Ruby Chico v. Commissioner, U.S. Tax Court, Docket No. 22264-16

**LICENSE**

2010 - Present   Certified Public Accountant – State of California

# ATTACHMENT B

**BRISBANE RECYCLING COMPANY, INC.**
**June 30, 2009 - 2014 Corporate Income Tax - Summary**

Agent: R Weitzel
Date: 3/10/2023

| BRISBANE'S REPORTED INCOME TAX | | | | | | | |
|---|---|---|---|---|---|---|---|
| Period Ending | Jun 30, 2009 FORM 1120 | Jun 30, 2010 FORM 1120 | Jun 30, 2011 FORM 1120 | Jun 30, 2012 FORM 1120 | Jun 30, 2013 FORM 1120 | Jun 30, 2014 FORM 1120 | Combined |
| Sales Revenue | $ 4,849,321 | $ 4,105,326 | $ 4,689,712 | $ 5,447,449 | $ 7,820,519 | $ 8,739,987 | $ 35,652,314 |
| [Less] Expenses | $ (4,978,812) | $ (4,124,106) | $ (4,689,712) | $ (5,512,184) | $ (7,820,519) | $ (8,739,987) | $ (35,865,320) |
| TAXABLE INCOME / (LOSS) | $ (129,491) | $ (18,780) | $ - | $ (64,735) | $ - | $ - | $ (213,006) |
| TOTAL TAX | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| GOVERNMENT'S INCOME TAX ADJUSTMENT CALCULATION | | | | | | | |
| Period Ending | Jun 30, 2009 FORM 1120 | Jun 30, 2010 FORM 1120 | Jun 30, 2011 FORM 1120 | Jun 30, 2012 FORM 1120 | Jun 30, 2013 FORM 1120 | Jun 30, 2014 FORM 1120 | Combined |
| Sales Revenue | $ 4,849,321 | $ 4,105,326 | $ 4,689,712 | $ 5,447,449 | $ 7,820,519 | $ 8,739,987 | $ 35,652,314 |
| [Less] Expenses | $ (2,770,196) | $ (2,690,106) | $ (3,679,116) | $ (3,492,184) | $ (4,085,193) | $ (4,185,549) | $ (20,902,344) |
| TAXABLE INCOME / (LOSS) | $ 2,079,125 | $ 1,415,220 | $ 1,010,596 | $ 1,955,265 | $ 3,735,326 | $ 4,554,438 | $ 14,749,970 |
| TOTAL TAX | $ 706,902 | $ 481,175 | $ 343,603 | $ 664,790 | $ 1,270,011 | $ 1,548,509 | $ 5,014,990 |
| TAX DIFFERENCE | $ 706,902 | $ 481,175 | $ 343,603 | $ 664,790 | $ 1,270,011 | $ 1,548,509 | $ 5,014,990 |

**BRISBANE RECYCLING COMPANY, INC.**
**June 30, 2009 - 2014 Corporate Income Tax Calculation - Details**

Agent: R Weitzel
Date: 3/10/2023

### BRISBANE'S REPORTED INCOME TAX

| Line | Period Ending | Jun 30, 2009 FORM 1120 | Jun 30, 2010 FORM 1120 | Jun 30, 2011 FORM 1120 | Jun 30, 2012 FORM 1120 | Jun 30, 2013 FORM 1120 | Jun 30, 2014 FORM 1120 | Combined |
|---|---|---|---|---|---|---|---|---|
| 1c | Gross receipts or sales | 4,837,311 | 4,100,145 | 4,653,172 | 5,470,401 | 7,814,944 | 8,734,512 | 35,610,485 |
| 2 | [Less] Cost of goods sold | (3,505,825) | (2,662,685) | (2,426,571) | (3,256,461) | (5,081,298) | (6,519,312) | (23,452,152) |
| 3 | Gross profit | 1,331,486 | 1,437,460 | 2,226,601 | 2,213,940 | 2,733,646 | 2,215,200 | 12,158,333 |
| 4~10 | [Add] Other income | 12,010 | 5,181 | 36,540 | (22,952) | 5,575 | 5,475 | 41,829 |
| 11 | Total income | 1,343,496 | 1,442,641 | 2,263,141 | 2,190,988 | 2,739,221 | 2,220,675 | 12,200,162 |
| 27 | [Less] Other deductions | (1,472,987) | (1,461,421) | (2,252,545) | (2,255,723) | (2,663,895) | (2,217,218) | (12,323,789) |
| 29 | [Less] Net operating loss deduction | - | - | (10,596) | - | (75,326) | (3,457) | (89,379) |
| 30 | Taxable income / [ loss ] | (129,491) | (18,780) | - | (64,735) | - | - | (213,006) |
| 31 | Total tax | - | - | - | - | - | - | - |

References
F1120 June 30, 2009 - US-0072052-65
F1120 June 30, 2010 - US-0072067-81
F1120 June 30, 2011 - US-0072083-100
F1120 June 30, 2012 - US-0072102-120
F1120 June 30, 2013 - US-0072122-139
F1120 June 30, 2014 - US-0072140-157

### GOVERNMENT'S INCOME TAX ADJUSTMENT CALCULATION

| Line | Period Ending | Jun 30, 2009 FORM 1120 | Jun 30, 2010 FORM 1120 | Jun 30, 2011 FORM 1120 | Jun 30, 2012 FORM 1120 | Jun 30, 2013 FORM 1120 | Jun 30, 2014 FORM 1120 | Combined |
|---|---|---|---|---|---|---|---|---|
| 1c | Gross receipts or sales | 4,837,311 | 4,100,145 | 4,653,172 | 5,470,401 | 7,814,944 | 8,734,512 | 35,610,485 |
| 2 | [Less] Cost of goods sold | (1,288,825) | (1,228,685) | (1,426,571) | (1,236,461) | (1,421,298) | (1,968,331) | (8,570,171) |
| 3 | Gross profit | 3,548,486 | 2,871,460 | 3,226,601 | 4,233,940 | 6,393,646 | 6,766,181 | 27,040,314 |
| 4~10 | [Add] Other income | 12,010 | 5,181 | 36,540 | (22,952) | 5,575 | 5,475 | 41,829 |
| 11 | Total income | 3,560,496 | 2,876,641 | 3,263,141 | 4,210,988 | 6,399,221 | 6,771,656 | 27,082,143 |
| 27 | [Less] Other deductions | (1,472,987) | (1,461,421) | (2,252,545) | (2,255,723) | (2,663,895) | (2,217,218) | (12,323,789) |
| 29 | [Less] Net operating loss deduction | (8,384) | - | - | - | - | - | (8,384) |
| 30 | Taxable income / [ loss ] | 2,079,125 | 1,415,220 | 1,010,596 | 1,955,265 | 3,735,326 | 4,554,438 | 14,749,970 |
| 31 | Total tax | 706,902 | 481,175 | 343,603 | 664,790 | 1,270,011 | 1,548,509 | 5,014,990 |
| | **TAX DIFFERENCE** | **706,902** | **481,175** | **343,603** | **664,790** | **1,270,011** | **1,548,509** | **5,014,990** |

References
F1120 June 30, 2009 - US-0072052-65
US-0077282-86
F1120 June 30, 2010 - US-0072067-81
US-0077288-95
F1120 June 30, 2011 - US-0072083-100,
298, 302
F1120 June 30, 2012 - US-0072102-120
US-0077304, 308, 311
F1120 June 30, 2013 - US-0072122-139;
US-0077312, 313, 315, 321, 326
F1120 June 30, 2014 - US-0072140-157;
US-0065359-64

**BRISBANE RECYCLING COMPANY, INC.**
**Summary Of Corporate Deduction Changes**

RA: R Weitzel
Date: 03/10/2023

### BRISBANE RECYCLING CORPORATION INC. (Income and Deductions June 30, 2009 - June 30, 2021)

| Line | Description | Jun 30, 2009 FORM 1120 | Jun 30, 2010 FORM 1120 | Jun 30, 2011 FORM 1120 | Jun 30, 2012 FORM 1120 | Jun 30, 2013 FORM 1120 | Jun 30, 2014 FORM 1120 | Jun 30, 2015 FORM 1120 | Jun 30, 2016 FORM 1120 | Jun 30, 2017 FORM 1120 | Jun 30, 2018 FORM 1120 | Jun 30, 2019 FORM 1120 | Jun 30, 2020 FORM 1120 | Jun 30, 2021 FORM 1120 | REFERENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1c | GROSS RECEIPTS OR SALES | $ 4,837,311 | $ 4,100,145 | $ 4,653,172 | $ 5,470,401 | $ 7,814,944 | $ 8,734,512 | $ 8,522,605 | $ 7,520,518 | $ 9,697,085 | $ 12,465,264 | $ 11,751,613 | $ 13,931,900 | $ 11,396,515 | F1120 June 30, 2009 US-0072052-65; US-0065689-795 |
| 2 | [Less] COST OF SALES | $ 3,505,825 | $ 2,662,685 | $ 2,426,571 | $ 3,256,461 | $ 5,081,298 | $ 6,519,312 | $ 1,384,433 | $ 1,247,409 | $ 1,379,547 | $ 1,986,471 | $ 1,736,361 | $ 2,418,830 | $ 2,791,801 | F1120 June 30, 2010 US-0072067-81 |
| 3 | GROSS PROFIT | $ 1,331,486 | $ 1,437,460 | $ 2,226,601 | $ 2,213,940 | $ 2,733,646 | $ 2,215,200 | $ 7,138,172 | $ 6,273,109 | $ 8,317,538 | $ 10,478,793 | $ 10,015,252 | $ 11,513,070 | $ 8,604,714 | F1120 June 30, 2011 US-0072083-100 |
| 4~10 | Other Income (Loss) | $ 12,010 | $ 5,181 | $ 36,540 | $ (22,952) | $ 5,575 | $ 5,475 | $ 30,106 | $ 6,095,023 | $ 670,364 | $ 48,110 | $ 54,880 | $ 38,960 | $ 85,483 | F1120 June 30, 2012 US-0072102-120 |
| 11 | TOTAL INCOME | $ 1,343,496 | $ 1,442,641 | $ 2,263,141 | $ 2,190,988 | $ 2,739,221 | $ 2,220,675 | $ 7,168,278 | $ 12,368,132 | $ 8,987,902 | $ 10,526,903 | $ 10,070,132 | $ 11,552,030 | $ 8,690,197 | F1120 June 30, 2013 US-0072122-139 F1120 June 30, 2014 US-0072140-157 |
| 12a | [Less] Officer Wages | $ 132,000 | $ 132,000 | $ 158,000 | $ 126,000 | $ 135,200 | $ 182,000 | $ 62,000 | $ 247,000 | $ 137,000 | $ 4,423,725 | $ 1,436,000 | $ 1,666,000 | $ 1,736,000 | F1120 June 30, 2015 US-0072158-191 |
| 12b | [Less] Officer Bonus (Joseph Nubla) | $ - | $ - | $ 300,000 | $ 100,000 | $ 440,000 | $ - | $ 700,000 | $ 2,775,000 | $ 5,000,000 | | | | | F1120 June 30, 2016 US-0072192-226 F1120 June 30, 2017 US-0073372-393 |
| 13a | [Less] Related Party (Family) Wages | $ 60,000 | $ 62,000 | $ 155,000 | $ 97,500 | $ 325,000 | $ 221,250 | $ 122,500 | $ 224,250 | $ 200,000 | | | | | F1120 June 30, 2018 US-0073394-428 |
| 13b | [Less] Related Party (Family) Bonus | $ - | $ - | $ 350,000 | $ 400,000 | $ 270,000 | $ - | $ 875,000 | $ 5,200,000 | $ 1,400,000 | $ 3,613,579 | $ 5,901,795 | $ 7,170,977 | $ 4,990,600 | F1120 June 30, 2019 US-0077429-463 |
| 13c | [Less] Non-Related Employees Wages | $ 407,124 | $ 397,081 | $ 457,440 | $ 506,368 | $ 592,972 | $ 714,224 | $ 704,114 | $ 671,319 | $ 760,312 | | | | | F1120 June 30, 2020 US-0077464-493 F1120 June 30, 2021 US-0077494-530 |
| 27 | [Less] OTHER DEDUCTIONS | $ 873,863 | $ 870,340 | $ 832,105 | $ 1,025,855 | $ 900,723 | $ 1,099,744 | $ 1,851,552 | $ 2,176,789 | $ 1,651,929 | $ 2,353,706 | $ 2,628,150 | $ 2,696,000 | $ 2,100,920 | |
| 29 | [Less] Net Operating Loss Deduction | $ - | $ - | $ 10,596 | | $ 75,326 | $ 3,457 | $ 140,667 | $ 543 | | $ 135,893 | $ 36,808 | $ 607 | $ 651 | |
| 30 | TAXABLE INCOME / (LOSS) | $ (129,491) | $ (18,780) | $ - | $ (64,735) | $ - | $ - | $ 2,712,445 | $ 1,073,231 | $ (161,339) | $ - | $ 67,379 | $ 18,446 | $ (137,974) | |
| 31 | TOTAL TAX | $ - | $ - | $ - | $ - | $ - | $ - | $ 922,231 | $ 364,899 | | $ - | $ - | $ - | $ - | |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| F1040 | JOSEPH NUBLA'S COMPENSATION | $ 120,000 | $ 120,000 | $ 380,000 | $ 220,000 | $ 570,000 | $ 150,000 | $ 835,000 | $ 2,911,750 | $ 5,125,000 | $ 4,145,225 | $ 1,691,000 | $ 1,900,500 | $ 1,680,500 | US-0067911; US-0068021, 122, 187, 253; US-0084826; US-0072437; US-0063836; US0077843; US0077871 |

**BRISBANE RECYCLING COMPANY, INC.**
**Bookkeeping of Expenses Listing Mr. Ku's Entities (2009-2014)**

RA: R Weitzel
Date: 03/10/2023

| Debit | Cost of Sales Expense Accrued | $14,881,981 |
|---|---|---|
| Credit | Accounts Payable (pay later, temporary liability) | $14,881,981 |

| Item | Entry Date | Cost of Sales Category | Vendor | Fiscal Year | Amount | Reference |
|---|---|---|---|---|---:|---|
| 3a | 10-Apr-09 | 802 - Rent | JPM, Inc. | 2009 | $ 165,000 | US-0077282-83, 328-331 |
| 3b | 15-May-09 | 802 - Rent | JPM, Inc. | 2009 | $ 540,000 | US-0077282-83, 328-331 |
| 8 | 6-May-10 | 802 - Rent | JPM, Inc. | 2010 | $ 620,000 | US-0077288-89, 328-331 |
| 10 | 3-Jun-11 | 802 - Rent | JPM, Inc. | 2011 | $ 550,000 | US-0077296-98, 328-331 |
| 11 | 14-Mar-12 | 802 - Rent | JPM, Inc. | 2012 | $ 625,000 | US-0077303-05, 328-331 |
| 12 | 27-Jun-13 | 802 - Rent | JPM, Inc. | 2013 | $ 640,000 | US-0077313, 315-316, 328-331 |
| | | | **Total for JPM, Inc.** | | **$ 3,140,000** | |
| 14 | 1-Dec-08 | 815 - Equipment Rental | Pegasus Aggregate, Inc. | 2009 | $ 500,000 | US-0077284-86, 329-331 |
| 15 | 1-May-09 | 812 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2009 | $ 184,000 | US-0077284-86, 329-331 |
| 16 | 2-Apr-09 | 815 - Equipment Rental | Pegasus Aggregate, Inc. | 2009 | $ 368,000 | US-0077284-86, 329-331 |
| 17 | 8-May-09 | 812 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2009 | $ 460,000 | US-0077284-86, 329-331 |
| 18a | 16-Jun-10 | 806 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2010 | $ 636,655 | US-0077290-93, 329-331 |
| 18b | 3-May-10 | 812 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2010 | $ 177,345 | US-0077294-95, 329-331 |
| 20 | 30-Jun-11 | 806 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2011 | $ 450,000 | US-0077296, 299-302, 329-331 |
| 21 | 12-Apr-12 | 806 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2012 | $ 630,000 | US-0077303, 306-309, 329-331 |
| 22 | 27-Jun-12 | 812 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2012 | $ 765,000 | US-0077303, 310-311, 329-331 |
| 23 | 12-Jun-13 | 974 - Cost of Sales | Pegasus Aggregate, Inc. | 2013 | $ 2,100,000 | US-0077312, 313, 329-331 |
| 25 | 2-May-13 | 806 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2013 | $ 420,000 | US-0077313, 318-322, 329-331 |
| 26 | 28-Jun-13 | 812 - Repairs & Maintenance | Pegasus Aggregate, Inc. | 2013 | $ 500,000 | US-0077313, 324-326, 329-331 |
| 27 | 23-Jun-14 | 974 - Cost of Sales | Pegasus Aggregate, Inc. | 2014 | $ 1,002,308 | US-0065359-364; US0077329-331 |
| 29 | 23-Jun-14 | 974 - Cost of Sales | Pegasus Aggregate, Inc. | 2014 | $ 2,004,616 | US-0065359-364; US0077329-331 |
| 30 | 27-Jun-14 | 974 - Cost of Sales | Pegasus Aggregate, Inc. | 2014 | $ 1,544,057 | US-0065359-364; US0077329-331 |
| | | | **Total for Pegasus Aggregate, Inc.** | | **$ 11,741,981** | |
| | | | **Grand Total** | | **$ 14,881,981** | |

**BRISBANE RECYCLING COMPANY, INC.**
Checks from Brisbane to Mr. Ku's Entities

RA: R Weitzel
Date: 03/10/2023

| Item | Brisbane Account | Check | Check Date | Deposit Date | Check Payable To | | Amount | Reference |
|---|---|---|---|---|---|---|---|---|
| 1 | First Bank x4093 | 1037 | 2-Mar-09 | 3-Mar-09 | JPM, Inc. | $ | 127,000 | US-0070373 |
| 2 | First Bank x4093 | 1041 | 26-Sep-09 | 29-Sep-09 | JPM, Inc. | $ | 493,000 | US-0070379 |
| 3 | Bank of America x4136 | 35893 | 12-Oct-09 | 8-Mar-10 | JPM, Inc. | $ | 705,000 | US-0064323, 65086 |
| 4 | First Bank x4093 | 1066 | 12-Dec-09 | 7-Jul-10 | JPM, Inc. | $ | 350,000 | US-0070389 |
| 5 | First Bank x4093 | 1067 | 19-Feb-10 | 16-Jul-10 | JPM, Inc. | $ | 450,000 | US-0070389 |
| 6 | First Bank x4093 | 1068 | 22-Mar-10 | 28-Jul-10 | JPM, Inc. | $ | 190,000 | US-0070389 |
| 7 | First Bank x4093 | 1070 | 27-May-10 | 10-Aug-10 | JPM, Inc. | $ | 198,000 | US-0070390 |
| 8 | Bank of America x4136 | 37356 | 29-Oct-10 | 28-Jan-11 | JPM, Inc. | $ | 620,000 | US-0064325, 65114 |
| 9 | First Bank x4093 | 1080 | 7-Feb-11 | 8-Nov-11 | JPM, Inc. | $ | 500,000 | US-0070405 |
| 10 | Bank of America x4136 | 38850 | 27-Dec-11 | 8-Feb-12 | JPM, Inc. | $ | 550,000 | US-0064326, 65153 |
| 11 | Bank of America x4136 | 39189 | 18-Jul-12 | 4-Dec-12 | JPM, Inc. | $ | 625,000 | US-0064324, 65190 |
| 12 | Union Bank x5111 | 41547 | 30-Dec-13 | 31-Dec-13 | JPM, Inc. | $ | 640,000 | US-0076207 |
| 13 | First Bank x4093 | 1034 | 17-Jan-09 | 20-Feb-09 | Pegasus Aggregate, Inc. | $ | 500,000 | US-0070372 |
| 14 | Bank of America x4136 | 35149 | 24-Dec-08 | 29-Sep-09 | Pegasus Aggregate, Inc. | $ | 500,000 | US-0064328, 65069 |
| 15 | Bank of America x4136 | 35651 | 19-Jun-09 | 29-Sep-09 | Pegasus Aggregate, Inc. | $ | 184,000 | US-0064340, 65069 |
| 16 | Bank of America x4136 | 35585 | 15-May-09 | 2-Oct-09 | Pegasus Aggregate, Inc. | $ | 368,000 | US-0064332, 65072 |
| 17 | Bank of America x4136 | 35880 | 14-Aug-09 | 19-Jan-10 | Pegasus Aggregate, Inc. | $ | 460,000 | US-0064329, 65080 |
| 18 | Bank of America x4136 | 36928 | 28-Jun-10 | 8-Nov-10 | Pegasus Aggregate, Inc. | $ | 814,000 | US-0064322, 65109 |
| 19 | First Bank x4093 | 1079 | 15-Jan-11 | 30-Aug-11 | Pegasus Aggregate, Inc. | $ | 100,000 | US-0070402 |
| 20 | Bank of America x4136 | 38851 | 30-Dec-11 | 6-Feb-12 | Pegasus Aggregate, Inc. | $ | 450,000 | US-0064331, 65153 |
| 21 | Union Bank x5111 | 39803 | 9-Nov-12 | 14-Dec-12 | Pegasus Aggregate, Inc. | $ | 630,000 | US-0076166 |
| 22 | Union Bank x5111 | 39804 | 9-Nov-12 | 21-Dec-12 | Pegasus Aggregate, Inc. | $ | 765,000 | US-0076166 |
| 23 | Union Bank x5111 | 40668 | 26-Jun-13 | 31-Dec-13 | Pegasus Aggregate, Inc. | $ | 2,100,000 | US-0076206 |
| 24 | First Bank x4093 | 1094 | 15-Jun-13 | 24-Feb-14 | Pegasus Aggregate, Inc. | $ | 294,000 | US-0070150, 70432 |
| 25 | Union Bank x5111 | 41643 | 28-Jan-14 | 28-Aug-14 | Pegasus Aggregate, Inc. | $ | 420,000 | US-0070160-61, 6238 |
| 26 | Union Bank x5111 | 41704 | 3-Feb-14 | 28-Aug-14 | Pegasus Aggregate, Inc. | $ | 500,000 | US-0070160-61, 6238 |
| 27 | Bank of America x4136 | 39192 | 8-Aug-14 | 8-Sep-14 | Pegasus Aggregate, Inc. | $ | 1,002,308 | US-0065279, 70160-63 |
| 28 | First Bank x4093 | 1100 | 15-Mar-14 | 23-Sep-14 | Pegasus Aggregate, Inc. | $ | 294,362 | US-0070166, 701439 |
| 29 | Union Bank x5111 | 42682 | 5-Sep-14 | 29-Oct-14 | Pegasus Aggregate, Inc. | $ | 2,004,616 | US-0070169, 76246 |
| 30 | Bank of America x4136 | 39196 | 28-Oct-14 | 30-Mar-15 | Pegasus Aggregate, Inc. | $ | 1,544,057 | US-0064620, 22 |
| | | | | | **Total** | $ | 18,378,343 | |

**HENRY KU ENTITIES**
**Heavy Equipment Purchase Summary**

RA: R Weitzel
Date: 03/10/2023

| Item | Payment Date | Bank Account | Name on Account | Vendor | Cashier's Check | Amount | Reference |
|---|---|---|---|---|---|---|---|
| 1 | 6-Nov-09 | First Bank x2516 | Pegasus Aggregate, Inc. | Mecom Equipment | 9500044644 | $ 178,500 | US-0088042 |
| 2 | 18-Nov-09 | First Bank x2516 | Pegasus Aggregate, Inc. | Powerscreen | 9500044678 | $ 120,000 | US-0088046 |
| 3 | 15-Apr-10 | First Bank x4164 | JP Monarch, Inc. | Powerscreen | 1419 | $ 45,000 | US-0070584 |
| 4 | 16-Jul-10 | First Bank x2516 | Pegasus Aggregate, Inc. | Mecom Equipment | 9500067585 | $ 25,000 | US-0070351-53 |
| 5 | 16-Jul-10 | First Bank x4164 | JP Monarch, Inc. | Mecom Equipment | 9500067585 | $ 127,213 | US-0070351-53 |
| 6 | 16-Jul-10 | First Bank x4164 | JP Monarch, Inc. | Mecom Equipment | 9500067585 | $ 25,000 | US-0070351-53 |
| 7 | 16-Jul-10 | First Bank x5600 | JPM Energy, Inc. | Mecom Equipment | 9500067585 | $ 25,000 | US-0070351-53 |
| 8 | 6-Dec-10 | First Bank x2516 | Pegasus Aggregate, Inc. | Powerscreen | 9500082206 | $ 90,000 | US-0088150 |
| 9 | 6-Dec-10 | First Bank x2516 | Pegasus Aggregate, Inc. | Powerscreen | 9500082205 | $ 110,000 | US-0088150 |
| 10 | 2-May-11 | First Bank x5600 | JPM Energy, Inc. | Powerscreen | 24694 | $ (35,000) | US-0070091 |
| 11 | 2-May-11 | First Bank x5037 | Henry Ku | Powerscreen | 24694 | $ (200,000) | US-0070091 |
| 12 | 22-Jun-11 | First Bank x2516 | Pegasus Aggregate, Inc. | Volvo Construction Equipment | 9500094955 | $ 235,000 | US-0070333-34 |
| 13 | 25-Oct-11 | First Bank x2516 | Pegasus Aggregate, Inc. | Powerscreen | 9500110076 | $ 215,000 | US-0070335-36 |
| 15 | 17-Jan-12 | First Bank x2516 | Pegasus Aggregate, Inc. | Cementech | SO93151-PP | $ 71,439 | US-0068329-30 |
| 16 | 17-Jan-12 | First Bank x2516 | Pegasus Aggregate, Inc. | Cementech | SO93225-PP | $ 15,800 | US-0068329-30 |
| 17 | 23-Mar-12 | First Bank x2516 | Pegasus Aggregate, Inc. | Cementech | 9500123939 | $ 294,213 | US-0070340-41 |
| 18 | 1-May-12 | First Bank x2516 | Pegasus Aggregate, Inc. | Powerscreen | 9500124022 | $ 190,000 | US-0070342-43 |
| 19 | 19-Jul-12 | First Bank x2516 | Pegasus Aggregate, Inc. | Mecom Equipment | 9500132765 | $ 297,687 | US-0070344-45 |
| 20 | 13-Feb-13 | First Bank x5037 | Henry Ku | McNeilus Company | 9500146764 | $ 350,000 | US-0070001-02; US-0070124 |
| 21 | 31-May-13 | First Bank x5037 | Henry Ku | McNeilus Company | 9500153957 | $ 190,740 | US-0070003-04; US-0070128 |
| 22 | 1-Nov-13 | First Bank x5037 | Henry Ku | Mecom Equipment | 9500153899 | $ 169,460 | US-0070333-34; US-0070139 |
| | | | | | **Total** | **$ 2,540,052** | |

**HENRY KU ENTITIES**
**Heavy Equipment Purchase Summary**

RA: R Weitzel
Date: 03/10/2023

### TOTALS

| | | |
|---|---|---|
| Pegasus Aggregate, Inc. | $ | 1,842,639 |
| JP Monarch, Inc. | $ | 197,213 |
| JPM Energy, Inc. | $ | (10,000) |
| Henry Ku | $ | 510,200 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| **2009 Tax Year** Ending December 31, 2009 | | Form 1040X Income Tax Return (Joseph & Abigail Nubla) | | | | |
|---|---|---|---|---|---|---|
| Line | | Per Tax Return | | Per Government | | Difference | Reference |
| 7 | Wages, salaries, tips - Form(s) W-2 | $ 170,150 | $ 170,150 | $ - | US-0067897-911 |
| 8a | Taxable interest - Schedule B | $ 23,936 | $ 23,936 | $ - | US-0067897-911 |
| **9a** | **Ordinary dividends - Schedule B** | $ - | $ 1,197,949 | $ 1,197,949 | US-0069298-99, 322; US-0070036-43, 49-50, 57-58;US-0067899-911 |
| 10 | Taxable refunds (state / local income taxes) | $ - | $ - | $ - | US-0067897-911 |
| 19 | Unemployment compensation | $ 1,436 | $ 1,436 | $ - | US-0067897-911 |
| 21 | Other income (list types and amounts) | $ - | $ - | $ - | US-0067897-911 |
| 22 | Total Income | $ 195,522 | $ 1,393,471 | $ 1,197,949 | US-0067897-911 |
| 40 | [Less] Itemized deductions | $ (82,229) | $ (70,249) | $ 11,980 | US-0067897-911 |
| 42 | [Less] Exemptions | $ (14,600) | $ (9,732) | $ 4,868 | US-0067897-911 |
| **43** | **Taxable income** | $ **98,693** | $ **1,313,490** | $ **1,214,797** | US-0067897-911 |
| 44 | Tentative tax | $ 17,044 | $ 430,083 | $ 413,039 | US-0067897-911 |
| 45 | Alternative minimum tax | $ 3,285 | $ - | $ (3,285) | |
| 54 | [Less] Tax credits | $ - | $ - | $ - | US-0067897-911 |
| **60** | **Total tax** | $ **20,329** | $ **430,083** | $ **409,754** | US-0067897-911 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| 2010 Tax Year Ending December 31, 2010 | Form 1040 Income Tax Return (Joseph & Abigail Nubla) | | | | |
|---|---|---|---|---|---|
| Line | | Per Tax Return | Per Government | Difference | Reference |
| 7 | Wages, salaries, tips - Form(s) W-2 | $ 161,058 | $ 161,058 | $ - | US-0072380-89 |
| 8a | Taxable interest - Schedule B | $ 8,093 | $ 8,093 | $ - | US-0072380-89 |
| **9a** | **Ordinary dividends - Schedule B** | **$ -** | **$ 1,181,548** | **$ 1,181,548** | US-0068445; US-0069341, 56-57, 64-67, 73-74; US-0070063-64, 71-72, 77-82; US-0072380-89; US-0070348-50 |
| 10 | Taxable refunds (state / local income taxes) | $ 813 | $ 813 | $ - | US-0072380-89 |
| 14 | Other (ordinary) gain or (loss) - Form 4797 | $ (56,083) | $ (56,083) | $ - | US-0072380-89 |
| 17 | Rental real estate, royalties - Schedule E | $ (60,620) | $ (60,620) | $ - | US-0072380-89 |
| 21 | Other income (list types and amounts) | $ 94,490 | $ 94,490 | $ - | US-0072380-89 |
| 22 | Total Income | $ 147,751 | $ 1,329,299 | $ 1,181,548 | US-0072380-89 |
| 40 | [Less] Itemized deductions | $ (81,850) | $ (81,850) | $ - | US-0072380-89 |
| 42 | [Less] Exemptions | $ (14,600) | $ (14,600) | $ - | US-0072380-89 |
| **43** | **Taxable income** | **$ 51,301** | **$ 1,232,849** | **$ 1,181,548** | US-0072380-89 |
| 44 | Tentative tax | $ 6,861 | $ 401,805 | $ 394,944 | US-0072380-89 |
| 54 | [Less] Tax credits | $ (100) | $ - | $ 100 | US-0072380-89 |
| 63 | [Less] Making work pay credit | $ (800) | $ - | $ 800 | US-0072380-89 |
| **60** | **Total tax** | **$ 5,961** | **$ 401,805** | **$ 395,844** | US-0072380-89 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| **2011 Tax Year** Ending December 31, 2011 | Form 1040 Income Tax Return (Joseph & Abigail Nubla) | | | Reference |
|---|---|---|---|---|
| Line | Per Tax Return | Per Government | Difference | |
| 7  Wages, salaries, tips - Form(s) W-2 | $ 447,238 | $ 447,238 | $ - | US-0072390-400 |
| 8a  Taxable interest - Schedule B | $ 4,367 | $ 4,367 | $ - | US-0072390-400 |
| **9a  Ordinary dividends - Schedule B** | **$ 1,012** | **$ 226,012** | **$ 225,000** | US-0069390, 401, 406, 411, 415, 422, 425, 428; US-0070082-83, 87, 92-100, 103; US-0072390-400 |
| 10  Taxable refunds (state / local income taxes) | $ 12,976 | $ 12,976 | $ - | US-0072390-400 |
| 13  Capital gain or (loss) - Schedule D | $ - | $ - | $ - | US-0072390-400 |
| 17  Rental real estate, royalties - Schedule E | $ - | $ - | $ - | US-0072390-400 |
| 21  Other income (list types and amounts) | $ - | $ - | $ - | US-0072390-400 |
| 22  Total Income | $ 465,593 | $ 690,593 | $ 225,000 | US-0072390-400 |
| 40  [Less] Itemized deductions | $ (49,563) | $ (49,563) | $ - | US-0072390-400 |
| 42  [Less] Exemptions | $ (14,800) | $ (14,800) | $ - | US-0072390-400 |
| **43  Taxable income** | **$ 401,230** | **$ 626,230** | **$ 225,000** | US-0072390-400 |
| 44  Tentative tax | $ 110,301 | $ 189,051 | $ 78,750 | US-0072390-400 |
| 45  Alternative minimum tax | $ 12,677 | $ - | $ (12,677) | US-0072390-400 |
| 54  [Less] Tax credits | $ (1,200) | $ (1,200) | $ - | US-0072390-400 |
| **61  Total tax** | **$ 121,778** | **$ 187,851** | **$ 66,073** | US-0072390-400 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| **2012 Tax Year** Ending December 31, 2012 | | Form 1040 Income Tax Return (Joseph & Abigail Nubla) | | | |
|---|---|---|---|---|---|
| Line | | Per Tax Return | Per Government | Difference | Reference |
| 7 | Wages, salaries, tips - Form(s) W-2 | $ 247,447 | $ 247,447 | $ - | US-0072401-411 |
| 8a | Taxable interest - Schedule B | $ 7,013 | $ 7,013 | $ - | US-0072401-411 |
| **9a** | **Ordinary dividends - Schedule B** | **$ 8,433** | **$ 248,433** | **$ 240,000** | US-0072401-411; US-0069390, 401, 406, 411, 415, 422, 425, 428; US-0070092-96, US-0070098-100, 103 |
| 10 | Taxable refunds (state / local income taxes) | $ - | $ - | $ - | US-0072401-411 |
| 13 | Capital gain or (loss) - Schedule D | $ - | $ - | $ - | US-0072401-411 |
| 17 | Rental real estate, royalties - Schedule E | $ - | $ - | $ - | US-0072401-411 |
| 21 | Other income (list types and amounts) | $ - | $ - | $ - | US-0072401-411 |
| 22 | Total Income | $ 262,893 | $ 502,893 | $ 240,000 | US-0072401-411 |
| 40 | [Less] Itemized deductions | $ (71,979) | $ (71,979) | $ - | US-0072401-411 |
| 42 | [Less] Exemptions | $ (15,200) | $ (15,200) | $ - | US-0072401-411 |
| **43** | **Taxable income** | **$ 175,714** | **$ 415,714** | **$ 240,000** | US-0072401-411 |
| 44 | Tentative tax | $ 36,977 | $ 114,636 | $ 77,659 | US-0072401-411 |
| 45 | Alternative minimum tax | $ 10,127 | $ 15,587 | $ 5,460 | US-0072401-411 |
| 54 | [Less] Tax credits | $ (1,200) | $ (1,200) | $ - | US-0072401-411 |
| **61** | **Total tax** | **$ 45,904** | **$ 129,023** | **$ 83,119** | US-0072401-411 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| **2013 Tax Year** Ending December 31, 2013 | | Form 1040 Income Tax Return (Joseph & Abigail Nubla) | | | | |
|---|---|---|---|---|---|---|
| Line | | Per Tax Return | | Per Government | | Difference | Reference |
| 7 | Wages, salaries, tips - Form(s) W-2 | $ | 579,480 | $ | 579,480 | $ | - | US-0072412-425 |
| 8a | Taxable interest - Schedule B | $ | 7,723 | $ | 7,723 | $ | - | US-0072412-425 |
| **9a** | **Ordinary dividends - Schedule B** | **$** | **8,529** | **$** | **168,529** | **$** | **160,000** | US-0069479, 485, 505, 510; US-0070121, 123, 127-128, 136-137, 140-141; US-0072412-425 |
| 13 | Capital gain or (loss) - Schedule D | $ | - | $ | - | $ | - | US-0072412-425 |
| 21 | Other income (list types and amounts) | $ | - | $ | - | $ | - | US-0072412-425 |
| 22 | Total Income | $ | 595,732 | $ | 755,732 | $ | 160,000 | US-0072412-425 |
| **40** | **[Less] Itemized deductions** | $ | (107,526) | $ | (102,726) | $ | 4,800 | US-0072412-425 |
| 42 | [Less] Exemptions (phased out) | $ | - | $ | - | $ | - | US-0072412-425 |
| **43** | **Taxable income** | **$** | **488,206** | **$** | **653,006** | **$** | **164,800** | US-0072412-425 |
| 44 | Tentative income tax | $ | 140,975 | $ | 206,236 | $ | 65,261 | US-0072412-425 |
| 45 | Alternative minimum tax | $ | 15,277 | $ | - | $ | (15,277) | US-0072412-425 |
| 54 | [Less] Tax credits | $ | (600) | $ | (600) | $ | - | US-0072412-425 |
| 60 | Other taxes (Net Investment + Medicare) | $ | 3,523 | $ | 3,523 | $ | - | US-0072412-425 |
| **61** | **Total tax** | **$** | **159,175** | **$** | **209,159** | **$** | **49,984** | US-0072412-425 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| **2014 Tax Year** Ending December 31, 2014 | | <u>Form 1040 Income Tax Return</u> (Joseph & Abigail Nubla) | | |
|---|---|---|---|---|
| Line | Per Tax Return | Per Government | Difference | Reference |
| 7 Wages, salaries, tips - Form(s) W-2 | $ 167,656 | $ 167,656 | $ - | US-0072426-36 |
| 8a Taxable interest - Schedule B | $ 6,485 | $ 6,485 | $ - | US-0072426-36 |
| **9a Ordinary dividends - Schedule B** | **$ 8,222** | **$ 5,815,542** | **$ 5,807,320** | US-0068841; US-0069519, 23, 36, 42-43; US-0070009-12; US-0070151, 52, 55-56, 60-62, 67-70; US-0072426-36 |
| 13 Capital gain or (loss) - Schedule D | $ (2,896) | $ (2,896) | $ - | US-0072426-36 |
| 22 Total Income | $ 179,467 | $ 5,986,787 | $ 5,807,320 | US-0072426-36 |
| **40** [Less] Itemized deductions | $ (56,162) | $ - | $ 56,162 | US-0072426-36 |
| **Standard deduction** | $ - | $ (12,400) | $ (12,400) | US-0072426-36 |
| 42 [Less] Exemptions (phased out) | $ (19,750) | $ - | $ 19,750 | US-0072426-36 |
| **43 Taxable income** | **$ 103,555** | **$ 5,974,387** | **$ 5,870,832** | US-0072426-36 |
| 44 Tentative income tax | $ 17,601 | $ 2,312,610 | $ 2,295,009 | US-0072426-36 |
| 45 Alternative minimum tax | $ 1,368 | $ - | $ (1,368) | US-0072426-36 |
| 54 [Less] Tax credits | $ - | $ - | $ - | US-0072426-36 |
| 60 Other taxes (Net investment) | $ - | $ 449 | $ 449 | US-0072426-36 |
| **61 Total tax** | **$ 18,969** | **$ 2,313,059** | **$ 2,294,090** | US-0072426-36 |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**SUMMARY OF INCOME TAX ADJUSTMENTS (Forms 1040)**

RA: Ryan Weitzel
Date: 3/10/2023

| 2015 Tax Year Ending December 31, 2015 | Form 1040 Income Tax Return (Joseph & Abigail Nubla) | | | Reference |
|---|---|---|---|---|
| Line | Per Tax Return | Per Government | Difference | |
| 7 | Wages, salaries, tips - Form(s) W-2 | $ 844,587 | $ 844,587 | $ - | US-0072437-70 |
| 8a | Taxable interest - Schedule B | $ 7,756 | $ 7,756 | $ - | US-0072437-70 |
| **9a** | **Ordinary dividends - Schedule B** | **$ 7,357** | **$ 3,067,357** | **$ 3,060,000** | US-0069260-61, 552, 646; US-0070013-15; US-0070170-173; US-0070170, 172, 178, 180; US-0072437-70 |
| 10 | Taxable refunds (state / local income taxes) | $ 8,332 | $ 8,332 | $ - | US-0072437-70 |
| 13 | Capital gain or (loss) - Schedule D | $ - | $ - | $ - | US-0072437-70 |
| 14 | Other (ordinary) gain or (loss) - Form 4797 | $ 10,813 | $ 10,813 | $ - | US-0072437-70 |
| 22 | Total Income | $ 878,845 | $ 3,938,845 | $ 3,060,000 | US-0072437-70 |
| **40** | **[Less] Itemized deductions** | $ (127,406) | $ (35,606) | $ 91,800 | US-0072437-70 |
| 42 | [Less] Exemptions (phased out) | $ - | $ - | $ - | US-0072437-70 |
| **43** | **Taxable income** | **$ 751,439** | **$ 3,903,239** | **$ 3,151,800** | US-0072437-70 |
| 44 | Tentative income tax | $ 243,485 | $ 1,491,599 | $ 1,248,114 | US-0072437-70 |
| 55 | [Less] Tax credits | $ - | $ - | $ - | US-0072437-70 |
| 62 | Other taxes (Net Investment + Medicare) | $ 6,235 | $ 6,235 | $ - | US-0072437-70 |
| **63** | **Total tax** | **$ 249,720** | **$ 1,497,834** | **$ 1,248,114** | US-0072437-70 |

RE: Joseph Nubla
FORM 1040 INCOME TAX

**UNREPORTED INCOME**
**SUMMARY**

RA: Ryan Weitzel
Date: 3/10/2023

| ITEM | DESCRIPTION | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | Reference |
|------|-------------|------|------|------|------|------|------|------|-----------|
| | **Unreported Income - Real Estate Purchases** | | | | | | | | |
| 1 | 710 Tender Lane, Foster City, CA | $ 967,949.00 | | | | | | | US-0070038, 39; US-0067899-911 |
| 2 | 60 Loma Vista Drive, Burlingame, CA | | $ 926,548.00 | | | | | | US-0070348-50, US-0070077, US-0068445 |
| 3 | 7211 Rosecliff Court, Pleasanton, CA | | | | | | $ 1,587,320.00 | | US-0070011-12, US-0070160-162, US-0068841 |
| | **Subtotal** | $ 967,949.00 | $ 926,548.00 | $ - | $ - | $ - | $ 1,587,320.00 | $ - | |
| | **Unreported Income - Bank Transfers** **From Ku (x5037) to Nubla (x9250)** | | | | | | | | |
| 4 | August 14, 2009 | $ 100,000.00 | | | | | | | US-0070036, 38; US-0067899-911 |
| 5 | October 2, 2009 | $ 20,000.00 | | | | | | | US-0070041, 43; US-0069298; US-0067899-911 |
| 6 | October 23, 2009 | $ 60,000.00 | | | | | | | US-0070049-50; US-0069299; US-0067899-911 |
| 7 | December 28, 2009 | $ 50,000.00 | | | | | | | US-0070057-58; US-0069322; US-0067899-911 |
| 8 | March 3, 2010 | | $ 20,000.00 | | | | | | US-0069341, US-0070063-64 |
| 9 | July 6, 2010 | | $ 10,000.00 | | | | | | US-0069356, US-0070071-72 |
| 10 | July 15, 2010 | | $ 50,000.00 | | | | | | US-0069357, US-0070071-72 |
| 11 | August 16, 2010 | | $ 30,000.00 | | | | | | US-0069364, US-0070077-78 |
| 12 | September 23, 2010 | | $ 10,000.00 | | | | | | US-0069366-67, US-0070079-80 |
| 13 | October 1, 2010 | | $ 70,000.00 | | | | | | US-0069373, US-0070079-80 |
| 14 | October 19, 2010 | | $ 65,000.00 | | | | | | US-0069374, US-0070081-82 |
| 15 | January 18, 2011 | | | $ 30,000.00 | | | | | US-0069390, US-0070082, 87 |
| 16 | May 26, 2011 | | | $ 20,000.00 | | | | | US-0069401, US-0070092-93 |
| 17 | June 22, 2011 | | | $ 50,000.00 | | | | | US-0069406, US-0070093-94 |
| 18 | July 26, 2011 | | | $ 20,000.00 | | | | | US-0069411, US-0070095-96 |
| 19 | August 10, 2011 | | | $ 25,000.00 | | | | | US-0069415, US-0070095-96 |
| 20 | October 5, 2011 | | | $ 30,000.00 | | | | | US-0069422, US-0070098-99 |
| 21 | November 15, 2011 | | | $ 30,000.00 | | | | | US-0069425, US-0070099-100 |
| 22 | December 30, 2011 | | | $ 20,000.00 | | | | | US-0069428, US-0070103 |

RE: Joseph Nubla
FORM 1040 INCOME TAX

**UNREPORTED INCOME**
**SUMMARY**

RA: Ryan Weitzel
Date: 3/10/2023

| ITEM | DESCRIPTION | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | Reference |
|---|---|---|---|---|---|---|---|---|---|
| | **Unreported Income - Bank Transfers** **From Ku (x5037) to Nubla (x9250)** | | | | | | | | |
| 23 | February 16, 2012 | | | | $ 40,000.00 | | | | US-0069433, US-0070107-106 |
| 24 | March 21, 2012 | | | | $ 40,000.00 | | | | US-0069437, US-0070106, 108 |
| 25 | May 23, 2012 | | | | $ 20,000.00 | | | | US-0069447, US-0070110-111 |
| 26 | September 4, 2012 | | | | $ 100,000.00 | | | | US-0069458, US-0070111, 114 |
| 27 | November 30, 2012 | | | | $ 40,000.00 | | | | US-0069466, US-0070111, 117 |
| 28 | February 7, 2013 | | | | | $ 40,000.00 | | | US-0069479, US-0070121, 123 |
| 29 | April 25, 2013 | | | | | $ 40,000.00 | | | US-0069485, US-0070127-128 |
| 30 | October 15, 2013 | | | | | $ 50,000.00 | | | US-0069505, US-0070136-137 |
| 31 | November 18, 2013 | | | | | $ 30,000.00 | | | US-0069510, US-0070140-141 |
| 32 | March 18, 2014 | | | | | | $ 40,000.00 | | US-0069519, US-0070151-152 |
| 33 | April 7, 2014 | | | | | | $ 50,000.00 | | US-0069523, US-0070151-152 |
| 34 | September 2, 2014 | | | | | | $ 50,000.00 | | US-0069536, US-0070160, 162 |
| 35 | November 3, 2014 | | | | | | $ 50,000.00 | | US-0069542, US-0070167-168 |
| 36 | November 14, 2014 | | | | | | $ 30,000.00 | | US-0069543, US-0070168, 170 |
| 37 | January 5, 2015 | | | | | | | $ 30,000.00 | US-0069260, 552; US-0070170, 172 |
| 38 | April 15, 2015 | | | | | | | $ 30,000.00 | US-0069261, 646; US-0070178, 180 |
| | **Subtotal** | $ 230,000.00 | $ 255,000.00 | $ 225,000.00 | $ 240,000.00 | $ 160,000.00 | $ 220,000.00 | $ 60,000.00 | |
| | **Unreported Income - Cashier's Checks** | | | | | | | | |
| 39 | Nubla Deposits #9500175284 into Personal x6815 | | | | | | $4,000,000.00 | | US-0070009-10, US-0070155-156 |
| 40 | Nubla Deposits #9500181879 into Personal x6815 | | | | | | | $3,000,000.00 | US-0070013-15, US-0070170-173 |
| | **Subtotal** | $ - | $ - | $ - | $ - | $ - | $4,000,000.00 | $3,000,000.00 | |
| | Total Unreported Income | $ 1,197,949.00 | $ 1,181,548.00 | $ 225,000.00 | $ 240,000.00 | $ 160,000.00 | $5,807,320.00 | $3,060,000.00 | |

RE: Joseph Nubla
Form 1040 Individual Income Tax

**UNREPORTED INCOME**
**REAL ESTATE PURCHASES AND LOAN FUNDING**

RA: Ryan Weitzel
Date: 3/10/2023

### KU's Purchase of Three Real Estate Properties for NUBLA Using Funds Originating from Brisbane Recycling Co

| ITEM | PROPERTY | TYPE | NUMBER | DATE | AMOUNT | REMITTER | PAYBLE TO | PURPOSE | SOURCE | AMOUNT | REFERENCE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 710 Tender Lane, Foster City, CA | First Bank Cashier's Check | 9500034050 | 26-Aug-09 | $ 967,948.87 | Pegasus Aggregate | Cornerstone Title | Funds to Close | Henry Ku \| First Bank Account x5037 Withdrawal | $ 967,948.87 | US-0070038, 39 |
| 2 | 60 Loma Vista Drive, Burlingame, CA | | | | | | First Bank | Cashier's Check Purchase | JP Monarch \| First Bank Account x4164 Check 1465 | $ 300,000.00 | US-0070349 |
| | | | | | | | First Bank | Cashier's Check Purchase | Pegasus \| First Bank Account x2516 Check 1597 | $ 340,000.00 | US-0070348 |
| | | | | | | | First Bank | Cashier's Check Purchase | Henry Ku \| First Bank Account x5037 Withdrawal | $ 286,547.99 | US-0070077, US-0070348 |
| | | First Bank Cashier's Check | 9500067676 | 7-Sep-10 | $ 926,547.99 | "First Bank #431 JP" | Fidelity National Title | Funds to Close | **Cashier's Check Total** | $ 926,547.99 | US-0070348, 350 |
| 3 | 7211 Rosecliff Court, Pleasanton, CA | First Bank Cashier's Check | 9500181712 | 12-Sep-14 | $ 1,587,320.00 | Pegasus Aggregate Inc | Chicago Title | Funds to Close | Henry Ku \| First Bank Account x5037 Withdrawal | $ 1,587,320.00 | US-0070011-12, US-0070160-162 |
| 4 | **TOTAL UNREPORTED INCOME** | | | | **$ 3,481,816.86** | | | | | | |

### KU's Cashier's Checks to Nubla for Loan Using Funds Originating from Brisbane Recycling Co

| ITEM | DESCRIPTION | TYPE | NUMBER | DATE | AMOUNT | REMITTER | PAYBLE TO | PURPOSE | SOURCE | REFERENCE |
|---|---|---|---|---|---|---|---|---|---|---|
| 5 | $4 Million Payment | First Bank Cashier's Check | 9500175284 | 24-Jun-14 | $ 4,000,000.00 | Henry Ku | Joseph Nubla | Funds Transfer for Loan | Henry Ku \| First Bank Account x5037 Withdrawal | US-0070009-10, US-0070155-156 |
| 6 | $3 Million Payment | First Bank Cashier's Check | 9500181879 | 21-Jan-15 | $ 3,000,000.00 | Henry Ku | Joseph Nubla | Funds Transfer for Loan | Henry Ku \| First Bank Account x5037 Withdrawal | US-0070013, 15, US-0070170, 173 |
| 7 | **TOTAL UNREPORTED INCOME** | | | | **$ 7,000,000.00** | | | | | |

ATTACHMENT C

# Nubla Sends Money to Ku's Personal and Entity Bank Accounts 2009-2015



**Brisbane Recycling Bank Accounts**

**First Bank Account x4093**

**Bank of America Account x4136**

**Union Bank Account x5111**

Checks Totaling: $320,000

Checks Totaling: $11,668,260

Checks Totaling: $4,715,343

Checks Totaling: $357,740

Checks Totaling: $1,107,000

$200,000

**Ku Personal & Entity Bank Accounts**

**Henry Ku Account: x1345**

**Henry Ku Account: x5037**

**Pegasus Aggregate, Inc. Account: x2516**

**JPM Energy Account: x5600**

**JPM Monarch Account: x4164**

**Cashier's Check**



# Ku Sends Money and Assets to Nubia 2009-2015



## Real Estate

**Ku Personal & Entity Bank Accounts**

**Pegasus Aggregate, Inc. Account x5037**

**JPM Account x4164 Pegasus Account x2516 Henry Ku x5037**

**Henry Ku Account x5037**

**2009 710 Tender Lane, Foster City Home: $967,949**

**2010 60 Loma Vista Drive, Burlingame Home: $926,548**

**2014 7211 Rosecliff Court, Pleasanton Home: $1,587,320**

**Joseph Nubla**



# Brisbane Recycling Income Tax 2009 - 2014

| Brisbane's Reported Income Tax | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2009** | **2010** | **2011** | **2012** | **2013** | **2014** | **Combined** |
| Sales Revenue | 4,849,321 | 4,105,326 | 4,689,712 | 5,447,449 | 7,820,519 | 8,739,987 | 35,652,314 |
| [Less] Expense Deductions | (4,978,812) | (4,124,106) | (4,689,712) | (5,512,184) | (7,820,519) | (8,739,987) | (35,865,320) |
| TAXABLE INCOME / ( LOSS ) | (129,491) | (18,780) | 0 | (64,735) | 0 | 0 | (213,006) |
| **TOTAL TAX** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |

| Government's Income Tax Adjustment Calculation | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2009** | **2010** | **2011** | **2012** | **2013** | **2014** | **Combined** |
| Sales Revenue | 4,849,321 | 4,105,326 | 4,689,712 | 5,447,449 | 7,820,519 | 8,739,987 | 35,652,314 |
| [Less] Expense Deductions | (2,770,196) | (2,690,106) | (3,679,116) | (3,492,184) | (4,085,193) | (4,185,549) | (20,902,344) |
| TAXABLE INCOME / ( LOSS ) | 2,079,125 | 1,415,220 | 1,010,596 | 1,955,265 | 3,735,326 | 4,554,438 | 14,749,970 |
| **TOTAL TAX** | **706,902** | **481,175** | **343,603** | **664,790** | **1,270,011** | **1,548,509** | **5,014,990** |

| Tax Difference (Variance) | | | | | | | |
|---|---|---|---|---|---|---|---|
| | **2009** | **2010** | **2011** | **2012** | **2013** | **2014** | **Combined** |
| **TOTAL VARIANCE** | **706,902** | **481,175** | **343,603** | **664,790** | **1,270,011** | **1,548,509** | **5,014,990** |

# Brisbane Recycling Wages and Bonuses 2010 - 2017

